AUSA: Alexandra N. Rothman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HUAISONG XIANG,<br>a/k/a "Jerry Xiang,"<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of 7 U.S.C. §§ 9(1), and 13(a)(5); 17 C.F.R. § 180.1; and 18 U.S.C. §§ 1343 and 2<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

26 MAG 3718

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOSEPH KIM, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
**(Commodities Fraud)**

1. From in or about March 2025 up to and including in or about February 2026, in the Southern District of New York and elsewhere, HUAISONG XIANG, a/k/a "Jerry Xiang," the defendant, willfully and knowingly, directly and indirectly, used and employed, and attempted to use and employ, in connection with a swap, a contract of sale of a commodity in interstate commerce, and for future delivery on and subject to the rules of a registered entity, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 180.1, by: (1) using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud; (2) making, and attempting to make, an untrue and misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements made not untrue and misleading; and (3) engaging, and attempting to engage in an act, practice, and course of business which operates and would operate as a fraud and deceit upon a person, to wit, XIANG, knowing that he had obtained material nonpublic information in breach of a duty, used that information to trade perpetual futures on a decentralized derivatives exchange for personal gain.

(Title 7, United States Code, Sections 9(1), 13(a)(5); Title 17, Code of Federal Regulations, Section 180.1; and Title 18, United States Code, Section 2.)

**COUNT TWO**
**(Wire Fraud)**

2. From in or about March 2025 up to and including in or about February 2026, in the Southern District of New York and elsewhere, HUAISONG XIANG, a/k/a "Jerry Xiang," the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television

communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, XIANG, knowing that he had misappropriated valuable confidential business information, which was subject to a duty of confidentiality, used that information to trade perpetual futures on a decentralized derivatives exchange in breach of his duties, to obtain money and property from his trading counterparties.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

**Overview**

3. Based on my review of documents, conversations with other members of law enforcement and a Robinhood employee, and the information described herein, I have learned that HUAISONG XIANG, a/k/a "Jerry Xiang," the defendant, misappropriated confidential and valuable nonpublic information from Robinhood Markets, Inc. ("Robinhood") and used that information to place a series of trades on Hyperliquid, a decentralized derivatives exchange. XIANG, who was then a software engineer at Robinhood, had access to Robinhood's confidential information about when certain cryptocurrency tokens would be available for trading on Robinhood's crypto trading platform. Based on this information, XIANG repeatedly bought perpetual futures linked to cryptocurrency tokens on Hyperliquid in advance of Robinhood's public announcement that new cryptocurrency tokens were available for trading, and profited from these trades.

**XIANG's Access to Robinhood's Confidential Commercial Data**

4. Based on my review of documents provided by Robinhood, Robinhood's periodic reports filed on Form 10-Q and 10-K, and conversations with other members of law enforcement and a Robinhood employee, I have learned the following, among other things:

a. Robinhood is a financial services company that, among other things, offers users a platform to trade various financial products, including securities, derivatives, and digital assets. Robinhood Crypto is a subsidiary of Robinhood that operates the digital asset trading platform. Through the Robinhood Crypto platform, users can buy, sell, and hold digital assets, such as cryptocurrencies. Robinhood Crypto does not support all digital assets, however, and only those listed by the company are available for trading.

b. Between in or about 2024 and in or about September 2026, HUAISONG XIANG, a/k/a "Jerry Xiang," the defendant, was employed as a software engineer at Robinhood, and was based out of Robinhood's Manhattan office. XIANG worked on the listing of new digital assets on Robinhood Crypto. In this role, XIANG routinely had access to nonpublic information regarding whether and when Robinhood would support additional cryptocurrencies for trading on Robinhood Crypto.

c. Information regarding the digital assets to be listed on Robinhood Crypto was commercially valuable to Robinhood and maintaining the confidentiality of contemplated future listings was important to Robinhood's ultimate commercial objectives. Among other things, Robinhood Crypto competes with other cryptocurrency exchanges on the breadth of its offerings.

Premature public disclosure of Robinhood's future listings would allow Robinhood's competitors to pursue similar listings and thus deprive Robinhood of the competitive advantage of listing those assets first. Additionally, because of the size and popularity of Robinhood's platform, the listing of a particular digital asset on Robinhood can create upward price pressure on the asset by generating new demand. The premature disclosure of such listing information can lead to a reduction in Robinhood's revenue because customers who would otherwise trade these digital assets on Robinhood Crypto once listed could instead trade them on a competitor's platform to profit from the expected price increase that would follow Robinhood's listing. Further still, Robinhood assesses its brand and reputation to be important to its ability to attract and retain customers. Premature disclosure of its plans for future listings, especially when that disclosure is selective and unauthorized, risks reputational damage that may diminish Robinhood's standing with current and potential customers.

d. A digital asset may be available for trading on Robinhood Crypto typically up to one hour before Robinhood publicly announces that the asset is listed on the platform. Once a cryptocurrency is available for trading, however, there is often upward price pressure, even before the public announcement.[1]

e. Robinhood maintained strict confidentiality over information regarding its upcoming digital assets listings. Even within the company, listing information for digital assets was restricted to a select group of employees, referred to as "Coin Aware Individuals." Coin Aware Individuals were granted access to a private Slack[2] channel, where information regarding, among other things, the listing dates for new digital assets was shared, including by Robinhood employees based in Manhattan. Based on my review of the private Slack channel, I have learned that the private Slack channel bore a description that stated, in part, "Confidential channel for [Robinhood Crypto] coin listings covering planning, readiness, and launch."

f. As a software engineer responsible for the listing of new cryptocurrency tokens on Robinhood Crypto, XIANG was designated as a Coin Aware Individual and had access to the private Slack channel.

g. Robinhood had a Confidential Information and Insider Trading Policy. That policy prohibited employees from trading in securities, crypto-assets, event contracts or other financial instruments while in possession of material non-public information obtained in the course of their employment at Robinhood. The policy further provided that Coin Aware Individuals, such as XIANG, were "strictly prohibited" from trading on Robinhood or on any other platform prior to and during the 24 hours after Robinhood publicly announces a new listing or delisting on Robinhood Crypto.

---

[1] This time gap between the listing and public announcement explains the reason, at times, that HUAISONG XIANG, a/k/a "Jerry Xiang," the defendant, closed his long positions before Robinhood had publicly announced that a particular digital asset was available for trading. *See infra* ¶¶ 6-7.

[2] Slack is workplace communication application that allows employees to communicate virtually. Slack is organized into, among other things, "channels," which are topic-specific group conversations. Some channels are public and open to the entire organization, while other channels are private with restricted access to certain individuals.

h. XIANG was aware of Robinhood's insider trading policy and the confidential nature of the digital asset listing information shared in the private Slack channel. In November 2024, for example, XIANG received an email informing him that because he would have access to information regarding Robinhood's digital assets listings, "[i]t is imperative [to] keep this information confidential and . . . refrain from abusing access to or knowledge of this information including by buying or selling a given asset based on this non-public information." Likewise, in May 2025, a member of the private Slack channel who was based in Manhattan sent a Slack message to XIANG and others, "we're T-1 from launch…The 24-hour trading halt for employees will be in place."

**Relevant Background on Hyperliquid Trading**

5. Based on my review of Hyperliquid's website and other publicly available information, I have learned the following, among other things:

a. Hyperliquid markets itself as a decentralized exchange for trading cryptocurrencies and derivative products, such as futures and other derivatives tied to cryptocurrencies. Hyperliquid does not currently have approval from the U.S. Commodities Futures Trading Commission to operate a futures contracts market and uses geofencing to restrict access to its platform when users attempt to access the platform from United States IP addresses. Based on my training and experience, however, I know that individuals can easily bypass these geographical limitations by using a virtual private network, or VPN, to access the Hyperliquid website.

b. Investors on Hyperliquid can purchase, among other things, perpetual futures ("perpetuals"). Perpetuals linked to cryptocurrency are derivative products that allow investors to profit from movements in the price of a cryptocurrency without owning the cryptocurrency itself. When an investor who goes "long" on a perpetual for a particular cryptocurrency, the investor stands to profit if the value of the cryptocurrency rises; an investor who "shorts" a perpetual for a particular cryptocurrency stands to profit if the value of the cryptocurrency goes down.

c. Unlike traditional futures contracts, Hyperliquid's perpetuals do not expire and can be maintained indefinitely. To keep a position open, however, traders must make or receive periodic funding payments, which align the perpetual's price with the spot price of the underlying asset. A trader can settle the perpetual at any time and realize their gain or loss.

d. Because perpetuals can be bought on margin through various trading platforms, including Hyperliquid, traders can create substantial exposure to the price movements of a cryptocurrency with comparatively little capital.

**XIANG Traded on Hyperliquid Based on Confidential Nonpublic Information**

6. Based on my review of documents provided by Robinhood, publicly available information reflecting trading on Hyperliquid, and records provided by cryptocurrency companies, I have learned the following, among other things:

a. On or about July 23, 2022, HUAISONG XIANG, a/k/a "Jerry Xiang," the defendant, created and registered in his name an account on a cryptocurrency exchange (the "Xiang Account").

b. On or about March 10, 2025, XIANG received a Slack message on the private Slack channel that Robinhood was considering listing POPCAT, a meme token, on March 13, 2025.

c. On or about March 12, 2025, XIANG, using the Xiang Account, sent approximately 18 Ethereum, valued at approximately $34,000, to Hyperliquid wallet 0x8081C8c38E6196a906CDa605444d66697E8BaCf9 ("Wallet-0x8081").

d. On or about March 12, 2025, after XIANG had transferred funds to Wallet-0x8081, XIANG received a Slack message on the private Slack channel that Robinhood would list POPCAT on March 13, 2025, at 9:00 a.m.[3]

e. On or about March 13, 2025, XIANG, using Wallet-0x8081, opened long positions on Hyperliquid for perpetuals with POPCAT as the underlying asset.

f. On or about March 13, 2025, Robinhood publicly announced that POPCAT had been listed on Robinhood. Once POPCAT became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, XIANG closed his long positions in POPCAT perpetuals, earning a profit on his trading.

**Additional Trading on Hyperliquid in Wallet-0x8081**

7. Based on my review of documents provided by Robinhood, publicly available information reflecting trading on Hyperliquid, and records provided by cryptocurrency companies, I have learned that, on at least ten other occasions between in or about May 2025 and in or about February 2026, Wallet-0x8081 was used for trading in perpetuals on Hyperliquid in advance of Robinhood's public announcements that the underlying cryptocurrency tokens would be listed on Robinhood Crypto. On each occasion, HUAISONG XIANG, a/k/a "Jerry Xiang," possessed material non-public information that Robinhood would list the cryptocurrency token on Robinhood Crypto as a result of his access to the private Slack channel.[4] For example:

a. On or about May 21, 2025, XIANG received a Slack message on the private Slack channel that Robinhood would list MEW and MOODENG, two meme tokens, on or about May 22, 2025. On or about May 22, 2025, Wallet-0x8081 opened long positions on Hyperliquid for perpetuals with MEW and MOODENG as the underlying asset. On or about May 22, 2025, Robinhood publicly announced that MEW and MOODENG had been listed on Robinhood. Once

---

[3] All times are in Eastern time.

[4] On or about March 13, 2025—after the March 13, 2025 trading described above, *see supra* ¶ 6—a second individual ("Individual-1"), who appears to reside outside of the United States, sent approximately $33,395 USDC to Wallet-0x8081. Based on my review of records from the U.S. Department of State, Individual-1 appears to be an associate of HUAISONG XIANG, a/k/a "Jerry Xiang." Among other things, Individual-1 listed XIANG's name as a point of contact in a recent visa application.

MOODENG became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, Wallet-0x8081 closed long positions in MOODENG perpetuals, earning a profit on his trading. As for MEW, before MEW became available for trading at Robinhood, and before Robinhood's public announcement about the new listing, Wallet-0x8081 closed long positions in MEW perpetuals.

b. On or about August 1, 2025, XIANG received a Slack message on the private Slack channel that Robinhood would list ONDO, a cryptocurrency token for Ondo Finance, on or about August 7, 2025. On or about August 7, 2025, Wallet-0x8081 opened long positions on Hyperliquid for perpetuals with ONDO as the underlying asset. On or about August 7, 2025, Robinhood publicly announced that ONDO had been listed on Robinhood. Once ONDO became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, Wallet-0x8081 closed its long positions in ONDO perpetuals, earning a profit on the trading.

c. On or about January 23, 2026, XIANG received a Slack message on the private Slack channel that Robinhood would list RENDER, the native token of the Render Network, on or about January 29, 2026. On or about January 29, 2026, Wallet-0x8081 opened long positions on Hyperliquid for perpetuals with RENDER as the underlying asset. On or about January 29, 2026, Robinhood publicly announced that RENDER had been listed on Robinhood. Once RENDER became available for trading at Robinhood, but before Robinhood's public announcement about the new listing, Wallet-0x8081 closed its long positions in RENDER perpetuals, earning a profit on the trading.

8. As a result of the above-described trading on Hyperliquid, HUAISONG XIANG, a/k/a "Jerry Xiang," the defendant, earned more than $50,000 in illicit profits, using Wallet-0x8081 to trade in perpetuals on Hyperliquid.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of HUAISONG XIANG, a/k/a "Jerry Xiang," the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

JOSEPH KIM
Special Agent
Federal Bureau of Investigation

Sworn to before me this 10th day of September, 2026.

THE HONORABLE JENNIFER E. WILLIS
United States Magistrate Judge
Southern District of New York